AUSAs: Samuel P. Rothschild and Robert B. Sobelman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LEO HERNANDEZ,<br><br>                    Defendant. | **SEALED COMPLAINT**<br><br>Violation of 18 U.S.C. §§ 1512(c)(2) and 2<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.: 

JASON PETRI, being duly sworn, deposes and says that he is a Task Force Officer with Homeland Security Investigations ("HSI") and a Detective with the New York City Police Department (the "NYPD"), and charges as follows:

## COUNT ONE
### (Obstruction of Justice)

1. From at least in or about May 2022 through at least in or about October 2022, in the Southern District of New York and elsewhere, LEO HERNANDEZ, the defendant, corruptly obstructed, influenced, and impeded an official proceeding, and attempted to do so, to wit, HERNANDEZ lied to the United States Probation Office for the Southern District of New York and the United States District Court for the Southern District of New York about a purported opioid addiction in order to improperly obtain a more lenient sentence in a narcotics case, and willfully caused such false information to be communicated to the Court by HERNANDEZ's criminal defense attorney.

(Title 18, United States Code, Sections 1512(c)(2) and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2. I am a Task Force Officer with HSI and a Detective with the NYPD, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement agents, witnesses, and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview

3. LEO HERNANDEZ, the defendant, obstructed the sentencing proceeding in a federal narcotics prosecution brought in the United States District Court for the Southern District

of New York, that is, *United States v. Leo Hernandez*, No. 20 Cr. 79 (RMB) (the "Narcotics Case"), by, among other things, (a) falsely stating to the United States Probation Office for the Southern District of New York (the "Probation Office") that he had an opioid addiction, which was then incorporated into HERNANDEZ's presentence investigation report (the "PSR"), and (b) causing his attorney in the Narcotics Case to make false representations to the Court in connection with sentencing regarding HERNANDEZ's purported addiction, including a claim that the addiction motivated the criminal conduct for which HERNANDEZ was prosecuted. However, in truth and in fact, HERNANDEZ had no such addiction, and provided false information to the Court in an improper attempt to obtain leniency at sentencing.

<u>HERNANDEZ Obstructed the Sentencing Proceeding in the Narcotics Case</u>

4. Based on my review of court documents and filings, I have learned, among other things, the following:

a. On or about January 28, 2020, a grand jury sitting in the Southern District of New York returned an indictment, which was filed under seal, charging LEO HERNANDEZ, the defendant, with one count of conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846 (the "Indictment"). *See United States v. Leo Hernandez*, No. 20 Cr. 79 (RMB).

b. On April 27, 2021, the Indictment was unsealed.

c. On April 28, 2021, HERNANDEZ was arrested on the charge in the Indictment upon his arrival in the United States after previously being apprehended in Colombia.

d. On April 28, 2022, HERNANDEZ pled guilty to the sole count of the Indictment pursuant to a plea agreement with the United States Attorney's Office for the Southern District of New York. Upon the acceptance of HERNANDEZ's plea, the Court directed that a presentence investigation report be prepared by the Probation Office and advised HERNANDEZ as follows:

| | |
|---|---|
| THE COURT: | Mr. Hernandez, in my view, it's in your best interest to cooperate with the probation department to prepare the presentence report because that report will be important in my decision as to what your sentence will be. So I suggest that you tell them what they ask, consulting, of course, with [HERNANDEZ's defense counsel], both the good things and the not so good things. Because if you don't disclose something that they ask you about and they—meaning the probation department—find it out themselves, then they might say that you were not being truthful with them and that would not be helpful to you. |
| THE DEFENDANT: | Yes, your Honor. I understand. |

> THE COURT:   You and [HERNANDEZ's defense counsel] and the government will have the right and the opportunity to examine this presentence report before the sentencing date, to file any objections that you find objectionable in the presentence report. So I urge you to review it carefully with [HERNANDEZ's defense counsel] and discuss it with him carefully before sentencing. If there are any mistakes in the presentence report, please point them out to [HERNANDEZ's defense counsel] so that he can point them out to me before the sentencing so that I don't proceed on the basis of mistaken information.

5.   Based on my conversation with the United States Probation Officer with the Probation Office ("Probation Officer-1") who prepared the PSR, and my review of the PSR, I have learned, among other things, the following:

a. Probation Officer-1 conducted an interview of LEO HERNANDEZ, the defendant, in the presence of HERNANDEZ's defense counsel, in the course of preparing the PSR. During the interview, HERNANDEZ's counsel reminded HERNANDEZ to be honest in answering the Probation Officer's questions.

b. Probation Officer-1 inquired with HERNANDEZ regarding his history of substance abuse. HERNANDEZ made statements to the Probation Officer regarding his purported history of substance abuse, including statements that were the sole basis for the Probation Officer including the following in the PSR:

> Between 2014 and 2018, the defendant used Oxycodone daily. He reported that he was prescribed Oxycodone while recovering from surgery on his ankle and later became addicted.

c. Based exclusively on HERNANDEZ's statements regarding his purported addiction to Oxycodone, the Probation Officer stated in the PSR that, because "the defendant has a history of drug usage, we believe a special condition requiring drug treatment is warranted." In particular, the PSR recommended that the Court impose the following special condition of supervised release:

> You will participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether you have reverted to using drugs or alcohol.

6.   Based on my review of court documents and filings, I have learned, among other things, the following:

a. On or about October 3, 2022, defense counsel for LEO HERNANDEZ, the defendant, submitted a sentencing memorandum to the Court in the Narcotics Case that included repeated references to HERNANDEZ's purported drug abuse problem, including the following:

> Already prescribed oxycodone . . . prior to the injury, Leo's dependence on the drug and his concomitant involvement in the conspiracy only deepened from that point. Leo recalls that his ankle injury truly hastened the worst period of his addiction that led him to obtain more and more pills which he took both to feed his habit and also sold to others.
>
> In and around 2017, with both his addiction and his offending behavior continuing, Leo (in moments of clarity and honest reflection) reports he became increasingly aware that he was not moving in the right direction. He was unsuccessful in his attempt to simply stop using "cold turkey" or completely divest himself of his activities in the conspiracy as the two were of course, inextricably intertwined. Nevertheless, Leo slowly began tapering down his weekly and then daily usage over a sustained period as he knew this would be the only way for him to fight his way out of the significant addiction problems that he had brought upon himself. While he tapered down his drug use over time, Leo also began formulating a plan for a new direction in his life, which included both a change in career and a complete change in scenery. He had always been enamored with Colombia and had long dreamed of moving down there and opening his own tourism business. Feeling like he was in an inescapable rut- no doubt due to his thoroughgoing guilt and uneasiness with his criminal offending and his addiction problems, Leo fully invested himself in turning what had always been a bit of fanciful dream into a reality. By the end of the calendar year 2017, Leo had made the necessary preparations, cut down his opioid use to zero, and moved for the first time in his life, out of New York City, resettling in Cartagena, Colombia.

b. HERNANDEZ's counsel's sentencing memorandum also included the following statement: "The days of giving in to temptation and the addiction-fueled thinking that drove his continued offending for the sustained period of time in the indictment are gone forever."

c. In stating the defense's sentencing recommendation at the conclusion of the sentencing memorandum, HERNANDEZ's counsel urged the Court to consider HERNANDEZ's "addiction during his period of offending."

d. On October 18, 2022, HERNANDEZ appeared before the Court for sentencing in the Narcotics Case. During that hearing, the Court explained, in describing its understanding of HERNANDEZ's history and characteristics, that the PSR contained the following:

> i. "The purpose for [HERNANDEZ's narcotics trafficking conduct] was so that he could use those prescriptions personally, 'he,' Mr. Hernandez, and also so that he could

4

resell some of them. Mr. Hernandez . . . became addicted to oxycodone after he was prescribed oxycodone for an ankle injury."

    ii. HERNANDEZ "reported to probation that he had . . . used oxycodone and that . . . he had become addicted to oxycodone."

  e. At that sentencing hearing, the Court confirmed with HERNANDEZ that he had read and discussed the PSR with his counsel and that he had no objections to raise.

  f. HERNANDEZ's sentencing range pursuant to the United States Sentencing Guidelines was 30 to 37 months' imprisonment. The Court sentenced HERNANDEZ to 20 months' imprisonment, which was approximately equivalent to the amount of time he had served in pretrial detention, to be followed by three years' supervised release.

  7. Based on my review of publicly available information in a Federal Bureau of Prisons database, I have learned, among other things, that LEO HERNANDEZ, the defendant, completed his sentence of incarceration and was released from custody on or about October 20, 2022.

  8. Based on my conversations with the United States Probation Officer with the United States Probation Office for the Eastern District of New York ("Probation Officer-2") who has been assigned to supervise LEO HERNANDEZ, the defendant, since on or about October 20, 2022, during the term of his supervised release, I have learned, among other things, the following:

  a. A condition of HERNANDEZ's supervised release was participation in a drug treatment program.

  b. During the intake assessment for that program, HERNANDEZ stated that he had never had a drug problem.[1]

  c. Similarly, HERNANDEZ repeatedly stated to a counselor that he had never had a drug problem and did not want to take part in drug counseling because it was unnecessary.

  9. Based on my review of court documents and filings, I have learned, among other things, that on or about August 23, 2023, a supervised release conference was held for LEO HERNANDEZ, the defendant, and that the following occurred during that conference:

  a. The Court inquired with HERNANDEZ about why he was "resistant[]" to participating in the drug treatment program as required by the conditions of his supervised release. HERNANDEZ responded as follows:

> . . . I did lie on the presentence report. I didn't have—I never had an addiction on opiates. I actually never even took the pills when I did get them for my surgery. I sold them instead. And that is the truth and it's very hard for me to relate to

---

[1] On one later occasion, LEO HERNANDEZ, the defendant, told a counselor that he lied at the intake assessment.

> other people in the program that are addicted. I am doing
> anything everything that I need to do. It's a little tough for
> me to just relate to everybody. And I know it's my own fault.
> I lied on the presentence report. So there is really nothing I
> can say about it. It's my fault.

    b. The Court then asked HERNANDEZ, "What was the purpose of lying, though, on the report? What was the benefit of doing that?" HERNANDEZ replied, "I was in prison at the time, and I thought maybe I might get a more lenient sentence, you know."[2]

  10. Based on my conversations with Probation Officer-2, I have learned, among other things, that, after the above-referenced August 23, 2023 supervised release conference, LEO HERNANDEZ, the defendant, admitted the following, in substance and in part, to Probation Officer-2:

    a. HERNANDEZ lied about his drug abuse history in his interview with Probation Officer-1 in preparation for the PSR.

    b. HERNANDEZ has never had a drug problem.

    c. HERNANDEZ did not take any of the pills he trafficked as part of the scheme for which he as prosecuted in the Narcotics Case. Rather, HERNANDEZ sold all of the pills to make money.

    d. HERNANDEZ occasionally used drugs at parties, but never abused them or had any addictions.

  11. Based on my conversations with a cooperating witness (the "CW"),[3] I have learned, among other things, the following:

    a. The CW was a co-conspirator with LEO HERNANDEZ, the defendant, in the conduct for which HERNANDEZ was prosecuted in the Narcotics Case.

---

[2] At a subsequent supervised release conference held on or about November 28, 2023, in the context of discussing the information that appeared in the PSR pertaining to LEO HERNANDEZ's, the defendant's, purported drug addiction, the Court stated, in part, "the presentence investigation report is probably the most important document in the case. Actually, in this case that is on file. So, if it's made up, I don't know. I don't know what to say about it. If it's made up, it actually presents another issue."

[3] The CW pled guilty pursuant to a cooperation agreement with the United States Attorney's Office for the Southern District of New York to three drug distribution offenses and one fraud crime. The CW received the benefit of a motion pursuant to U.S.S.G. § 5K1.1 at sentencing. Law enforcement has deemed the CW reliable, and the information the CW has provided to the Government has been corroborated, in part, by other evidence including, among other things, statements by other witnesses, electronic evidence, financial records, and prescription records.

   b. The CW met HERNANDEZ in or about 2015 through a mutual friend and frequently socialized with HERNANDEZ between then and in or about late 2017, when HERNANDEZ began traveling regularly to Colombia.

   c. The CW observed HERNANDEZ use party drugs such as speed or ecstasy on a few occasions. The CW never observed HERNANDEZ use Oxycodone or any other opioids.

   d. To the CW's knowledge, HERNANDEZ never used or was addicted to Oxycodone or any other opioids.

   WHEREFORE, I respectfully request that a warrant be issued for the arrest of LEO HERNANDEZ, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

_____
Jason Petri
Task Force Officer
Homeland Security Investigations

Sworn to before me this 19th day of January, 2024.

_____
THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York